IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ACTION ENTERTAINMENT, LLC d/b/a
NEW MEXICO SCORPIONS HOCKEY CLUB,

01 MAR 27 PM 2: 57

Plaintiff,

v.

CLERK-ALBUQUERQUE

Cause No. CIV-01 0338BB/DJS

WESTERN PROFESSIONAL HOCKEY LEAGUE,
a Texas Corporation,

Defendant.

MEMORANDUM IN SUPPORT OF
MOTION TO STAY ENFORCEMENT, GRANT A TEMPORARY
RESTRAINING ORDER, AND INJUNCTIVE RELIEF DUE TO THE
WESTERN PROFESSIONAL HOCKEY LEAGUE
DISCIPLINARY DECISION

## I. Introduction.

The New Mexico Scorpions (hereinafter "Scorpions") have been fined by the Western

Professional Hockey League (hereinafter "WPHL") for alleged salary cap violations. Although

the WPHL had previously ruled that a salary cap violation had occurred, they conducted their

own internal investigation as mandated by the Lex Scripta through a Franchise Advisor Board

(hereinafter "FAB"), and again concluded that a salary cap violation had occurred. The FAB

consists of owner/competitors of the New Mexico Scorpions who gain to benefit from their

decision. The Scorpions have denied all the evidence and proven evidence to the contrary, but

were still found to be in violation of the Lex Scripta based on fabricated evidence.

The Scorpions' right to appeal the decision is not outlined in the Lex Scripta. The Lex Scripta is silent as to any provision of appellate procedures or alternative dispute resolutions for any decisions made by the WPHL or FAB. This in itself is a violation of contractual duty in failing to provide the Scorpions with that due process as required by New Mexico law and public policy. Furthermore, the determination of whether there has been a salary cap violation or not is one that needs to be decided through a declaratory relief action interpreting the contract prior to any other action. Therefore, the injunction should be granted to determine if the contractual duties of fair play and natural justice have been violated along with whether the evidence which the WPHL used in their investigation was substantial enough to warrant such a drastic decision. Additionally, the evidence needs to be heard by a neutral decision-making party.

"The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Planning & Design Solutions v. City of Santa Fe, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994) (quoting Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (citation omitted)). It is evident that the WPHL is not dealing in good faith and fair dealings through its decision-making process. It is clear that the WPHL has injured the rights of the Scorpions by not providing any appellate procedures under the contract.

## II. Jurisdiction

The WPHL and the Scorpions are subject to suit in this county because they conduct business in the State of New Mexico and the County of Bernalillo.

2

### III. Background Facts.

On March 7, 2001, the Western Professional Hockey League (hereinafter "WPHL") issued a letter (Exhibit "A") to the New Mexico Scorpions (hereinafter "Scorpions") informing them of violations of the Lex Scripta §2.3 and §4.3 (Exhibit "B"). Specifically, it was stated that the Scorpions were in violation of the league-mandated salary cap. The Scorpions were fined monetarily and game points were taken away.

The Scorpions were then given the opportunity to respond to these allegations of a salary cap violation after the initial letter was already sent (Exhibit "A"). The WPHL provided the Scorpions with evidence of the supposed salary cap violations that was provided to the WPHL by an ex-player, Brad Englehart. The evidence included an e-mail that was apparently sent by Coach Tony Martino listing the terms of a contract and a homemade videotape, apparently showing that cash had been given to Mr. Englehart.

The Scorpions responded to the league, denying all the allegations and disputing the authenticity of the evidence. The Scorpions provided affidavits and statements completed by Coach Martino and players that rebutted all the evidence, including a statement by a Microsoft engineer stating that the supposed e-mail was not the original version and that said e-mail, quite possibly, had been altered prior to the printing of a hard copy. In addition, the alleged videotape showing money being transferred does not identify any specific person nor does it identify any of the supposed monetary amounts that were to have been delivered.

Subsequently, the WPHL held their own hearing *after* the primary letter (Exhibit "A") was sent, as mandated by the Lex Scripta (Exhibit "B"), in an effort to investigate the allegations. The Franchise Advisory Council is composed of the owners/competitors of other

3

league teams who are also part of the WPHL, was presented with the evidence. The Franchise Advisory Council concluded that the Scorpions had violated the salary cap and fined them accordingly (Exhibit "C"). Neither the WPHL, the Franchise Advisory Council, nor the Lex Scripta have an appellate procedure.

### IV. Argument.

#### Standard for issuing stay/granting
#### Temporary Restraining Order and preliminary injunctive relief

"The object of the preliminary injunction is to preserve the status quo pending the litigation of the merits. This is quite different from finally determining the cause itself." Penn v. San Juan Hosp. Inc., 528 F.2d 1181, 1185 (10th Cir. 1975). A preliminary injunction does not determine the merits of the case, nor does it determine controverted facts. See 43 C.J.S. Injunctions § 5, at 745-46 (1978). The Scorpions are not asking this court to rule on the merits of the case but only to preserve the status quo as to complete the pending litigation on its merits. "Injunctions are harsh and drastic remedies [that] should issue only in extreme cases of pressing necessity and only where there is no adequate . . . remedy at law." Hill v. Community of Damien of Molokai, 1996 NMSC 8, P51, 121 N.M. 353, 911 P.2d 861 (quoting Padilla v. Lawrence, 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct. App. 1984) (alteration in original)). At this point, there is no other remedy at law that can be exercised in such a short time. The WPHL playoffs are scheduled to begin on March 30, 2001.

The granting of an injunction is an equitable remedy, and whether to grant equitable relief lies within the sound discretion of the trial court. Moody v. Stribling, 1999 NMCA 94, P30, 127 N.M. 630, 985 P.2d 1210. "To obtain a preliminary injunction, a [party] must show that: (1) the [party] will suffer irreparable injury unless the injunction is granted; (2) the

4

threatened injury outweighs any damage the injunction might cause the defendant; (3) issuance of the injunction will not be adverse to the public's interest; and (4) there is a substantial likelihood [the moving party] will prevail on the merits." La Balbo v. Hymes, 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct. App.), cert. denied, 115 N.M. 359, 851 P.2d 481 (1993). "The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated." Blackwelder Furn., 550 F.2d at 195.

Due to the point reduction, the Scorpions will suffer irreparable injury by not being allowed to participate in the post season playoffs. This leads to a maximum loss of six weeks revenues, including concessions, parking, souvenirs, advertising, wages for state fair employees as well as wages for the players and staff, not to mention the good will of the community of Albuquerque. The reputation of the team, its coaches, the staff, and the organization will be tainted due to these false allegations. This irreparable injury caused by the WPHL's arbitrary and capricious decision, coupled with the unilateral decision-making process in not allowing a proper appellate procedure, violates the Scorpions' contractual due process rights and is a breach of it fiduciary duties. The WPHL and the Lex Scripta are silent on this issue so as not to give any rights to any team when the WPHL is in breach of contract and is contrary to public policy.

Similarly, the requirement of likelihood of success on the merits is also relaxed when the pleadings before the Court raise substantial and legitimate issues of wrongful conduct and the nonmoving party will not be substantially harmed by granting the injunction. See Community Comm. Co. v. City of Boulder, 660 F.2d 1370, 1375-76 (10th Cir. 1981) (probability of success is

relaxed where the "plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."); <u>Kopicki v. Fitzgeerald Automotive Family Employee Benefits Plan</u>, 121 F. Supp. 2d. 467, 472 (D. Md. 2000) ("The balance-of-hardship test correctly emphasizes that, where serious issues are before the Court, it is a sound idea to grant injunctive relief, provided that it can be done without imposing too excessive an interim burden upon the defendant.").

As discussed below and in the Scorpions' response to the allegations, the fact that the Scorpions have no right to appeal makes the WPHL's ad hoc and arbitrary treatment of the Scorpions is a breach of the contract and the situation that the Scorpions will succeed on the merits of the declaratory relief action. That being the case, the status quo should be preserved because, at a minimum, the Scorpions have raised significant contractual issues that need to be adjudicated prior to any other actions. Because the enforcement of the WPHL's decision will upset the status quo and will interfere with the Scorpions' contractual rights and because the Scorpions are only requesting to maintain the status quo, the Scorpions' request for a stay or preliminary injunction should be granted. Therefore, because of the significant evidence of the WPHL's wrongful conduct and the significant bad faith contractual issues at stake, a stay of the enforcement of the WPHL's disciplinary letter until the Court can resolve the merits should be granted.

<b>The Scorpions will suffer irreparable<br>injury if the stay is not granted.</b>

In the preliminary injunction analysis, "the irreparable harm to the plaintiff and the harm to the defendant are the two most important factors." <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991). It is appropriate to grant injunctive relief where

"there is a probable right and an undoubted danger, and the need of protection to the plaintiff outweighs any probable injury to the defendant." Todd by Todd, 841 F.2d at 88. If a stay is not granted and the Scorpions eventually prevail on the merits, the Scorpions' likely harm in having its playoff opportunity denied is incalculable from a monetary perspective and from the perspective of the organizations' diminished reputation. Cafeteria Operators, 124 N.M. at 447 (where damages would be "difficult to calculate," there is no adequate remedy at law.). The Scorpion's position as the top-rated hockey team in the WPHL would allow them to have home-ice advantage throughout the playoffs. This home-ice advantage would benefit the organization in additional revenues, ranging from concessions to parking along with additional wages for all the players and state fair employees.

Moreover, the Scorpions' position as New Mexico's number one hockey team, and the prestige that goes along with it, cannot be solely quantified in dollars. Because participating in the playoffs is an integral part of any sports organization, the Scorpions will be irreparably harmed if the WPHL is permitted to enforce its own decision prior to the Court resolving this matter on the merits.

### The League will suffer no
### hardship if a stay is issued

The balance of the hardships between the WPHL and the Scorpions clearly weigh in the Scorpions' favor. "The balance-of-hardship test correctly emphasizes that, where serious issues are before the court, it is a sound idea to [grant injunctive relief], provided that it can be done without imposing too excessive an interim burden upon the defendant." Blackwelder Furn., 550 F.2d at 194-95. In fact, it is difficult to imagine any hardship the WPHL will suffer if the stay is granted. By its actions, the WPHL has intentionally made sure that the best team in the league

is denied its right to participate in the playoffs based on a disgruntled ex-players' falsified statements.  The league will still continue with the playoffs as scheduled, with the same number of teams as before.  The only hardship is that experienced by a weaker team in not making the playoffs; a hardship which they would have suffered anyway, which is a separate issue for that team and *not* a hardship for the WPHL.  In fact, the league would *benefit* from the Scorpions being in the playoffs since the Scorpions have one of the highest attendance records in the league.  On the other hand, the Scorpions will experience significant hardships if a stay is not issued.  The balancing of hardships test weighs strongly in favor of granting the Scorpions' motion.  Kopicki, 125 F. Supp.2d at 472 ("The balance-of-hardship test correctly emphasizes that, where serious issues are before the Court, it is a sound idea to grant injunctive relief provided that it can be done without imposing too excessive an interim burden upon the [nonmoving party]").  There is no hardship that the WPHL will suffer from granting the stay.

### The Public interest is furthered
### by granting the stay

The public has an interest in protecting the contractual procedural rights of the New Mexico Scorpions and the people of New Mexico. The public also has an interest in good faith and fair dealings between contractual parties. "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement.  Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Planning & Design Solutions v. City of Santa Fe, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994) (quoting Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (citation omitted)). The public interest is also

8

furthered by not allowing organizations, such as the WPHL, to make arbitrary and capricious decisions, and unilateral decisions without having substantial evidence, thereby harming an entire community.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Haaland v. Baltzley, 110 N.M. 585, 588, 798 P.2d 186, 189 (1990).  Furthermore, the employees and players of the Scorpions would be furthered by the stay, not to mention all the state fair employees and vendors who would benefit from the stay.  Returning the Scorpions to the status quo will only lead to increased public interest of the fans of New Mexico who support the Scorpions and protect contractual provisions from arbitrary and capricious organizational decision making.

### There is a substantial likelihood [the moving party] will prevail on the merits

The WPHL's arbitrary and capricious, and bad faith conduct is perhaps best illustrated by the WPHL's letter of March 7, 2001, (Exhibit "A") clearly showing that they had *already* determined that the New Mexico Scorpions violated the salary cap without any investigation. Next, the WPHL decided that it should follow its own rules laid out by the Lex Scripta §2.11 (Exhibit "B"), and convened the Franchise Advisory Board made up of owners/competitors of the Scorpions to review the evidence.  Prior to the telephonic hearing, the WPHL gave the Scorpions an opportunity to respond to the allegations.

The allegations consisted of an e-mail that was apparently sent to the player in question, Brad Englehart, outlining contract negotiations between he and Coach Martino.  After careful review of the e-mail and discussion with Coach Martino, it was determined that Coach Martino did not send that particular e-mail as it was being represented.  The Scorpions enlisted the

assistance of an e-mail expert to retrieve the original e-mail from Coach Martino's hard drive. After a complete scan of the hard drive, an e-mail was found and downloaded. The original e-mail, as retrieved, along with several affidavits from players, staff, and coaches indicating that salary cap violations were not occurring were submitted to the league for their review even though they had already determined that the Scorpions were in violation of the Lex Scripta. A videotape allegedly showing money being handed to a player was also provided to the league. The videotape was of such poor quality that it did not identify any faces or individuals. It is inconceivable that the WPHL determined that it was substantial evidence in their decision-making process.

The Franchise Advisory Board was then convened and a telephonic hearing was conducted. The final decision of the Franchise Advisory Board was that the Scorpions were in violation of the Lex Scripta for a salary cap violation. Subsequently, the WPHL issued their second letter (Exhibit "C") with a finding of the violation, and fined the Scorpions $50,000.00, in addition to taking away 34 game points. The fine of 34 points was substantial enough to remove the Scorpions from playoff contention and end their season prematurely.

This constitutes substantial and undisputed evidence of the WPHL's arbitrary and capricious conduct toward the Scorpions. Such arbitrary and capricious conduct violates New Mexico law as well as the Scorpions' rights to contractual due process. (Planning and Design Solutions v. City of Santa Fe, 118 N.NM. 707, 713, 885 P.2d 628, 634 (1994) (a decision is arbitrary or capricious if it is "willful and unreasonable action, without consideration and disregard of facts or circumstances.)

Most critically, of course, is the fact that the WPHL failed to perform a balancing of the evidence or, as stated by the Lex Scripta in §2.9 (Exhibit "D"), failed to provide substantial evidence to warrant such a decision.  The evidence provided is a hard copy of an e-mail allegedly sent by Coach Martino and a videotape apparently showing that a cash transaction occurred. Neither constitutes substantial evidence and each can be reputed.  However, the Scorpions, according to the Lex Scripta, have no right to appeal and are bound by this arbitrary and capricious, unilateral decision-making process which is a breach of their contract and fair dealing.  "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." <u>Planning & Design Solutions v. City of Santa Fe</u>, 118 N.M. 707, 714, 885 P.2d 628, 635 (1994) (quoting <u>Bourgeous v. Horizon Healthcare Corp.</u>, 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (citation omitted)).


## V.  Conclusion.

In short, because the Scorpions have established that they are likely to prevail on the merits and, alternatively, have raised significant contractual discrepancies indicated that the WPHL's actions are unlawful, a stay of this matter through final resolution is appropriate. Furthermore, the Scorpions are seeking declaratory relief for proper interpretation of the contract since there is dispute as the whether there is even a salary cap violation.  The Scorpions are likely to suffer irreparable harm and neither the WPHL nor the public will suffer any great burden by the issuance of a stay.  Wherefore, the Scorpions respectfully request that the Court

grant their motion to stay enforcement of the WPHL's disciplinary letter pending a resolution of this matter on the merits.

Respectfully submitted:

Raynard Struck
Attorney for Plaintiff
610 Seventh Street, N.W.
Albuquerque, New Mexico 87102
(505) 242-7979

12